UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

METAL TECHNOLOGIES, INC.,

    Plaintiff,

    v.                                          Case No. 07-C-0577

IRENE RAMIREZ and
WEIGEL, CARLSON, BLAU & CLEMENS, S.C.,

    Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S
MOTION TO DISMISS THE ALTERNATIVE COUNTERCLAIM
AND MOTION FOR SUMMARY JUDGMENT**

---

**I. PROCEDURAL BACKGROUND**

On June 22, 2007, the plaintiff, Metal Technologies, Inc. ("Metal Technologies") filed a complaint against the defendants, Irene Ramirez ("Ramirez") and Weigel, Carlson, Blau & Clemens, S.C. (the "Law Firm") seeking "equitable relief in the form of a constructive trust or equitable lien upon amounts held by Defendants that belong to Plaintiff, in accordance with Section 502(a)(3) of [the Employment Retirement Income and Security Act ("ERISA")]." (Compl. at 1.)

On October 5, 2007, Ramirez filed an alternative counterclaim against Metal Technologies, requesting "$3,894.42 in health care and medical bills which plaintiff should have paid, but did not pay as part of the health insurance and medical care benefits which were to have been provided to . . . Ramirez." (Alt. Countercl. at 1.) The counterclaim was to be considered only if the court denied the defendant's September 27, 2007 motion to dismiss. The defendants' motion to dismiss was denied during a court hearing on October 17, 2007. On November 2, 2007, Metal Technologies filed

a motion to dismiss the alternative counterclaim. Pursuant to Civil L.R. 7.1(b), the defendants "must serve a response brief and . . . affidavits or other documents within 21 days of service." The certificate of service filed with the court indicates that the plaintiff served the defendants by first class mail on November 2, 2007. Accordingly, the defendants' response to the plaintiff's motion to dismiss the alternative counterclaim was due to the court on November 26, 2007. No response was ever received by the court. Accordingly, Metal Technologies' motion to dismiss the alternative counterclaim is now ready for resolution.

On October 9, 2007, Metal Technologies filed a motion for summary judgment. The motion was submitted to the court as an alternative motion to be considered only if the court denied Metal Technologies' concurrent motion for default judgment. Also included in Metal Technologies' October 9, 2007 submissions to the court were a motion to strike the defendants' answer and a motion to dismiss. On October 17, 2007, in a hearing before the court, the court denied Metal Technologies' motion for default judgment, motion to strike the defendants' answer, and motion to dismiss. The court further ordered that the defendants file their response to the plaintiff's motion for summary judgment by December 3, 2007. No response was ever filed. Accordingly, Metal Technologies' motion for summary judgment is now ready for resolution.

## II. FACTUAL BACKGROUND

Pursuant to Civil L.R. 56.2(a), Metal Technologies submitted proposed findings of fact in support of its motion for summary judgment. Civil L.R. 56.2(e) requires the court to "conclude that there is no genuine issue as to any proposed finding of fact to which no response is set out." As the defendants failed to respond to the plaintiff's motion for summary judgment, including the proposed

2

findings of fact, this court must accept as true all of the facts set forth in the plaintiff's proposed findings of fact. Accordingly, the undisputed facts of this case are set forth below.

Metal Technologies is the fiduciary of the Metal Technologies, Inc. Welfare Benefit Plan ("the Plan"), an employee welfare benefit plan within the meaning of ERISA § 1002(1). (Plaintiff's Proposed Findings of Fact "PPFOF" at ¶ 2.) Metal Technologies is the Plan sponsor, administrator, and is the named fiduciary of the Plan within the meaning of ERISA §§ 1002(16)(A) and (B), and 1102(a)(3). (PPFOF at ¶ 2.) The Plan provides health benefits to certain employees of Metal Technologies and is self-funded by Metal Technologies. (PPFOF at ¶ 3.) Benefits provided under the Plan are contained within the Plan's summary plan description. (PPFOF at ¶ 3.)

The Plan contains a subrogation provision requiring a covered employee or covered dependent who obtains a recovery from a third party for an injury or sickness to immediately repay the Plan for the medical expenses paid by the Plan to treat that injury or sickness. (PPFOF at ¶ 4.) The Plan language provides in relevant part:

**Subrogation and Reimbursement**

The Plan has a right to subrogation and reimbursement, as defined below:

*Right to Subrogation*

The right to subrogation means the Plan is substituted to any legal claims that you may be entitled to pursue for Benefits that the Plan has paid. Subrogation applies when the Plan has paid Benefits for a Sickness or Injury for which a third party is considered responsible, e.g. an insurance carrier if you are involved in an auto accident.

The Plan shall be subrogated to, and shall succeed to, all rights of recovery from any or all third parties, under any legal theory of any type, for 100 percent of any services and Benefits the Plan has paid on your behalf relating to any Sickness or Injury caused by any third party.

*Right to Reimbursement*

3

> The right to reimbursement means that if a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury.

(PPFOF at ¶ 3; Verified Compl., Ex. A at 68-69.)

Ramirez, at all times relevant herein, was a beneficiary under the Plan. (PPFOF at ¶ 4.) She received benefits from the Plan totaling $49,311.44 after an automobile accident. (PPFOF at ¶ 7.) The Plan paid the benefits, and Ramirez accepted them, under an express condition that she repay the benefits to the extent that she is able to recover amounts from a third party who is responsible for her injuries. (PPFOF at ¶ 7.) Following the accident, Ramirez retained the services of Attorney Robert Figg and the Law Firm, to pursue personal injury claims against State Farm Insurance and the driver of the other car involved in the automobile accident. (PPFOF at ¶ 5.)

State Farm Insurance agreed to tender is policy limits of $25,000 to settle the claims being brought by Ramirez through her attorneys. (PPFOF at ¶ 8.) Ramirez accepted State Farm Insurance's $25,000 settlement offer, and the Law Firm received the settlement proceeds and deposited them in the Law Firm's client trust account. (PPFOF at ¶ 9.) Upon learning of Ramirez's claim, the Plan, through its third-party agent, Ingenix, notified the defendants of its lien in early August of 2005. (PPFOF at ¶ 6.)

On June 21, 2007, counsel for the Plan contacted the Law Firm, informing the Law Firm that the Plan would be filing an action to seek reimbursement under ERISA. (PPFOF at ¶ 12.) In this correspondence, counsel for the plaintiff specifically requested that the Law Firm not distribute any funds obtained in the settlement and hold the funds in the Law Firm's trust account. (PPFOF at ¶ 12.) Further, plaintiff's counsel requested that if the funds had already been disbursed to Ramirez, that

4

the Law Firm stop payment immediately and keep all remaining funds associated with the settlement in the Law Firm's trust account pending the result of the temporary restraining order which was to be filed with the complaint. (PPFOF at ¶ 12.)

On June 22, 2007, plaintiff filed the complaint and temporary restraining order. (PPFOF at ¶ 13.) Attorney Weigel from the Law Firm wrote plaintiff's counsel confirming that the claim did settle for $25,000 and that Ingenix, had notified the Law Firm of the Plan's lien. (PPFOF at ¶¶ 14-15.) On June 26, 2007, during a conversation between plaintiff's counsel and defense counsel, Attorney Weigel indicated that he had told Ramirez to hold onto her portion of the settlement pending this action and recommended to her that she return the funds back to the Law Firm's trust account. (PPFOF at ¶ 16.) On July 9, 2007, plaintiff's counsel again wrote to Attorney Weigel reiterating that the Plan would like to eliminate the need and expense of an injunction hearing by agreeing to place the settlement proceeds in the Law Firm's possession until the merits of the matter were resolved. (PPFOF at ¶ 17.) Along with this correspondence, plaintiff's counsel enclosed a proposed stipulation and order, wherein the parties would agree to put the remaining amount of the settlement proceeds in the Law Firm's escrow account. (PPFOF at ¶ 17.)

On July 10, 2007, United States District Court Judge Charles N. Clevert, Jr. held a status conference in this matter wherein Attorney Weigel indicated that $12,000 remained of the settlement proceeds and that they were in Ramirez's possession. (PPFOF at ¶ 18.) Attorney Weigel further indicated that Ramirez would return the remaining amount of the proceeds to be held in trust in the firm's trust account, thereby agreeing to the proposed stipulation and order before the court. (PPFOF at ¶ 18.) Based on these representations to the court, plaintiff did not pursue its request for an injunction as the parties agreed to hold the remaining funds in the Law Firm's trust account, pending

settlement or disposition on the merits. (PPFOF at ¶ 18.) The settlement proceeds currently remain in the possession and control of the Law Firm. (PPFOF at ¶ 19.)

## III.  DISCUSSION

Currently pending before the court are the plaintiff's motion to dismiss the alternative counterclaim and motion for summary judgment. The court will address each motion in turn.

A.  *Motion to Dismiss the Alternative Counterclaim*

Metal Technologies moves to dismiss the alternative counterclaim filed by the defendants pursuant to Fed. R. Civ. P. 12(b)(6), alleging that "Ramirez has failed to exhaust the available administrative remedies under the terms of the applicable employee benefit plan." (Br. at 1.) Because Ramirez does not appear to have adequately pursued available administrative remedies and because Ramirez has not indicated to the court that such remedies were unavailable or that pursuing them would be futile, the court will grant the plaintiff's motion to dismiss the alternative counterclaim.

The Seventh Circuit has long recognized "that the intent of Congress is best effectuated by granting district court's discretion to require administrative exhaustion." *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000). Requiring exhaustion "furthers the goals of minimizing frivolous lawsuits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for claim resolution." *Id.* "Furthermore, requiring administrative exhaustion enables the compilation of a complete record in preparation of judicial review." *Id.*

Ramirez's counterclaim asserts that Metal Technologies owes Ramirez $3,894.42 for health care and medical bills that Metal Technologies failed to pay but was obligated to pay under the terms of the Plan. Metal Technologies alleges that the Plan specifically establishes an administrative

6

appeals process for any participant, including Ramirez, to challenge how any claim for benefits was administered and paid. (Mot. to Diss., Ex. A.) Metal Technologies also alleges that Ramirez never filed an administrative appeal arising from any claims that she submitted for payment during her employment. Ramirez does not contest either of these statements.

This court agrees with the Seventh Circuit, that administrative exhaustion furthers important judicial goals and finds a party's attempt to exhaust administrative remedies to be desirable before filing federal suit. However, the Seventh Circuit Court of Appeals has held that "a plaintiff is excused from exhausting administrative remedies where (1) administrative remedies are not available or (2) pursuing those remedies would be futile." *Id.*

Ramirez, in not responding to Metal Technologies' motion to dismiss the alternative counterclaim, fails to assert either exception to the administrative exhaustion requirement. Indeed, in not responding to the motion to dismiss, Ramirez does not contest Metal Technologies' other assertions -- that an administrative appeals process exists and that Ramirez failed to utilize it before filing her alternative counterclaim. Accordingly, as the court finds enforcement of the administrative exhaustion requirement generally desirable, and Ramirez has provided the court with no reason not to enforce the rule in this instance, the court grants Metal Technologies' motion to dismiss the alternative counterclaim.

B.   *Motion for Summary Judgment*

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

7

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of*

8

*Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Metal Technologies filed this claim pursuant to Section 502(a)(3) of ERISA seeking "equitable relief in the form of a constructive trust or equitable lien upon amounts held by Defendants that belong to the Plaintiffs." (Verified Compl. at 1.) Metal Technologies argues that summary judgment is appropriate and necessary in this case because the undisputed facts demonstrate that the Plan paid medical benefits to Ramirez in the amount of $49,311.44; the Plan's summary plan description provides that the Plan shall be subrogated to, and shall succeed to, all rights of recovery from any at-fault third party; Ramirez received a $25,000 settlement from an at-fault third party; and at least some of the $25,000 settlement remains in the Law Firm's trust account. Accordingly, Metal Technologies moves the court (1) to grant its motion for summary judgment; (2) to impose a constructive trust and equitable lien in favor of Metal Technologies (through the Plan) upon the remaining settlement funds; (3) to declare that the Plan is the rightful owner of the remaining settlement funds to the extent necessary to reimburse the Plan; (4) to direct the defendants to execute any documents necessary to transfer legal title of the constructive trust to the Plan; and

9

(5) to award the plaintiff interest, costs, and attorney's fees, or any other relief the court deems just and appropriate.

Because Ramirez and the Law Firm did not submit to the court a response to the plaintiff's proposed findings of fact, the local rules require the court to accept those facts as undisputed. In doing so, the court is obliged to grant the plaintiff's motion for summary judgment.

A fiduciary may bring a civil action under § 502(a)(3) of ERISA "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(2); *Sereboff v. Mid Atlantic Med. Serv., Inc.*, ___ U.S. ___, 126 S. Ct. 1869, 1873 (2006). There is no dispute that Metal Technologies is a fiduciary under ERISA, that the purpose of this suit is to "enforce . . . the terms of" the "Right to Subrogation" in the Plan, and that the relief requested by Metal Technologies is equitable. *See Sereboff*, 126 S. Ct. at 1873. Accordingly, Metal Technologies must show that the undisputed facts demonstrate that the "Right to Subrogation" clause entitles it to the settlement proceeds Ramirez received from State Farm Insurance.

The undisputed facts establish that Ramirez was a beneficiary of the Plan and that the Plan paid $49,311.44 in medical benefits after Ramirez was injured in a automobile accident in May of 2005. The Plan's subrogation clause expressly states that "[t]he Plan has a first priority right to receive payment on any claim against a third party before you receive payment from that third party." As it is undisputed that Ramirez received a $25,000 settlement from State Farm Insurance, a third party in the automobile accident, the subrogation clause relieves the defendants of any right to the

10

settlement money until the Plan is reimbursed for the benefits provided to Ramirez. Therefore, the plaintiff's motion for summary judgment is granted.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion to dismiss the alternative counterclaim (dkt #40) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (dkt #25) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that a constructive trust and equitable lien in favor of Metal Technologies (through the Plan) be and hereby is imposed upon the remaining settlement funds;

**IT IS FURTHER ORDERED** that the Plan be and hereby is the rightful owner of the remaining settlement funds to the extent necessary to reimburse the Plan;

**IT IS FURTHER ORDERED** that the defendants execute any documents necessary to transfer legal title of the constructive trust to the Plan;

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 11th day of January 2008, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge